UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEAN LIU,
      Plaintiff,


      v.                                    CIVIL ACTION NO.
                                            13-10269-MBB

TARGET CORPORATION,
      Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT TARGET CORPORATION'S RENEWED MOTION FOR SUMMARY**
**JUDGMENT (DOCKET ENTRY # 79)**

**March 7, 2016**

**BOWLER, U.S.M.J.**

Pending before this court is a renewed motion for summary
judgment filed by defendant Target Corporation ("defendant")
pursuant to Fed.R.Civ.P. 56 ("Rule 56").  (Docket Entry # 79).
Plaintiff Jean Liu ("plaintiff") opposes the motion.  (Docket
Entry # 82).

PROCEDURAL BACKGROUND

On December 7, 2012, plaintiff, a resident of Belmont,
Massachusetts, filed a complaint in Massachusetts Superior Court
(Middlesex County) against defendant.  On February 12, 2013,
defendant removed the case to the United States District Court
for the District of Massachusetts.

Plaintiff alleges that she tripped and fell on a "dangerous
and defective" curb located in front of a Target department

store.  (Docket Entry # 8, p. 14).  Plaintiff contends that the "'rolled'" design of the curb was unsafe because "[t]he uneven, sloped surface of the curb creates an excessive cross slope." (Docket Entry # 8, p. 15).  The complaint sets out the following causes of action:  (1) negligence resulting in personal injury (Count One); and (2) violation of the state building code resulting in personal injury (Count Two).  (Docket Entry # 8, p. 16).

On May 1, 2014, defendant moved for summary judgment. (Docket Entry # 45).  Plaintiff opposed the motion on the basis that she was entitled to conduct further discovery prior to summary judgment proceedings.  (Docket Entry # 49).  On July 1, 2014, this court denied defendant's motion for summary judgment without prejudice and allowed plaintiff to conduct additional discovery of defendant.  (Docket Entry # 65).  On October 2, 2015, defendant filed the renewed motion for summary judgment. (Docket Entry # 79).

                        STANDARD OF REVIEW

Summary judgment is designed "to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Tobin v. Federal Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no

                                2

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire District, 741 F.3d 295, 301 (1st Cir. 2014).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (citations and internal quotation marks omitted)). The evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in her favor. Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file," Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014), including documents, "affidavits or declarations." Fed.R.Civ.P. 56(c)(1)(A); see Ahmed v. Johnson, 752 F.3d at 495. "Unsupported allegations and speculation," however, "do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to

defeat summary judgment." Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011); see Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39-40 (1st Cir. 2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded").

In accordance with LR 56.1, the moving party must submit a "concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried." The party opposing the motion must include a statement of material facts to which it asserts "there exists a genuine issue to be tried." LR 56.1. Unless the nonmovant controverts the statements made by the moving party, the facts "will be deemed for purposes of the motion to be admitted" and comprise part of the summary judgment record. See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003).

FACTUAL BACKGROUND

A.   The Incident

On December 14, 2009, plaintiff tripped and fell while walking towards the entrance of the Target department store in Watertown, Massachusetts. (Docket Entry # 79-2, pp. 3, 6). Plaintiff testified that the pavement was uneven in the spot where she fell. (Docket Entry # 79-2, p. 3). The weather on the day of the incident was cloudy and cool. (Docket Entry # 79-2, p. 5). There was no rain, snow or precipitation at the time of the incident. (Docket Entry # 79-2, p. 68).

4

The lower portion of the "rolled curb" at issue is called the "gutter." (Docket Entry # 83-2, p. 16).  The gutter is one foot wide and is the first portion of the curb that a guest would encounter when entering the store.  (Docket Entry # 83-2, p. 16).  The gutter portion of the curb is a light gray colored concrete that is even and aligned with the bituminous parking lot.  (Docket Entry # 83-2, pp. 16-17).  This creates a color contrast at the flush border between the tarmac and the light grey of the curb.  (Docket Entry # 83-2, p. 16).  The gutter transitions to a four-inch rise in elevation that occurs over a one-foot run.  (Docket Entry # 83-2, p. 17).  Following this slope, the curb then levels out again before meeting the sidewalk at a flush border.  (Docket Entry # 83-2, p. 17).  According to a group manager in construction project management at Target, Rob Grundstrom ("construction project manager"), there are a number of grooves where the curb meets the sidewalk to signal a transition.  (Docket Entry # 83-2, pp. 17-18).

Plaintiff had previously seen the curb in front of the store prior to the day of the incident.  (Docket Entry # 79-2, p. 4).  Additionally, plaintiff observed the curb immediately before she tripped as she was walking from her vehicle in the parking lot toward the entrance of the store.  (Docket Entry # 79-2, p. 4).  Plaintiff was walking toward the entrance of the store when she tripped over "[t]he uneven part of the curb."

(Docket Entry # 79-2, p. 3).

Plaintiff testified at deposition that, as she was walking towards the rolled curb, she had her pocketbook in front of her and was looking down. (Docket Entry # 79-2, pp. 13-14). As she approached the rolled curb, plaintiff put her pocketbook on her left shoulder and simultaneously fell forward onto the ground. (Docket Entry # 79-2, p. 14). She remained conscious after the fall, but "sustained multiple injuries." (Docket Entry # 79-2, pp. 6, 10).

The construction project manager does not dispute that it is important for any transition or elevation change to be open and conspicuous as a safety warning to visitors. (Docket Entry # 83-2, pp. 41-42). As previously explained, while there is conspicuity between the gutter and the tarmac and also between the curb and the sidewalk, there is no warning where the transition actually occurs. Additionally, the construction project manager testified that it would be feasible to incorporate a warning between the gutter and the slope, where the transition actually occurs. (Docket Entry # 83-2, p. 51). He also acknowledges that it was the expectation and intention that Target customers would be traversing the curb at issue in order to enter the store. (Docket Entry # 83-2, p. 21).

On August 5, 2008, defendant's Senior Design Project Manager ("senior design manager") wrote a letter to the

6

Watertown Inspector of Buildings ("the building inspector"),
explaining that defendant implemented the rolled curb design
starting in 2004.  (Docket Entry # 79-8, p. 2).  The senior
design manager described the design in detail and informed the
building inspector that defendant had adopted the "curb design
in hundreds of stores nationwide."  (Docket Entry # 79-8, p. 2).

B.   Defendant's Expert

Defendant's expert, Walter Blair Adams ("Adams"), is a
registered architect, a licensed construction supervisor and a
certified building commissioner in Massachusetts.  (Docket Entry
# 79-6, p. 8).  Based on a review of the Massachusetts state
building code, the records of the Watertown building department
and photographs taken at the site, Adams rendered an opinion to
a reasonable degree of professional certainty.  (Docket Entry #
79-6, p. 9).

Adams found that the rolled curb at issue was "structurally
sound and in excellent condition."  (Docket Entry # 79-6, p. 7).
Additionally, he opined that the surface of the curb was "smooth
and free of any projections or tripping hazards."  (Docket Entry
# 79-6, p. 7).  Furthermore, Adams found the sidewalk in front
of Target to be in compliance with all of the applicable
building codes.  (Docket Entry # 79-6, p. 8).  In his opinion,
"[t]he routes along the accessible paths have a level surface
with no elevation change greater than 1/4-inch and no slope

7

exceeding that permitted for a slopped [sic] walkway." (Docket Entry # 79-6, p. 8).

Adams also opined that, "the changes in color from the bituminous paving to the concrete walkways, as well as the 1-foot deep ribbed transition surfaces clearly identify that a change from the asphalt parking lot and driveway to the concrete sidewalk is occurring." (Docket Entry # 79-6, p. 8). Accordingly, in Adams' opinion, "[t]he interface or transition where the driveway meets the concrete sidewalk was clearly identified by the transition in paving material, and the concrete ribbing at the time of [plaintiff]'s fall." (Docket Entry # 79-6, p. 8). In conclusion, Adams rendered an opinion that the routes over the rolled curb were "safe and code compliant" and "clearly designate where the rolled curb conditions are located in order to alert pedestrians to the curb condition." (Docket Entry # 79-6, p. 8).

C.  Plaintiff's Expert

Plaintiff's expert, David C. Cowen ("Cowen"), has been a licensed architect in Massachusetts for more than 20 years. (Docket Entry # 79-9, p. 3). Cowen has been employed by Robson Forensic for the last 11 years. (Docket Entry # 79-9, p. 3). During this time period, Cowen has investigated more than 100 trip and fall incidents. (Docket Entry # 79-9, p. 3).

After reviewing the record, Cowen rendered an opinion

within the bounds of reasonable architectural and technical certainty that "[t]he rolled curb and gutter where [plaintiff] fell was a tripping hazard along a foreseeable pedestrian path that violated long-established and applicable standards for safe walkways and was dangerous in a manner that caused her fall." (Docket Entry # 79-9, p. 10).  Cowen additionally opined that the rolled curb design at issue here "violated the Massachusetts Building Code in effect at the time of the construction of the curb in a manner that caused the incident."  (Docket Entry # 79-9, p. 10).

Cowen found that defendant should have known that plaintiff's path of travel across the rolled curb was "a reasonably foreseeable pedestrian path for customers" approaching the [store's] entrance.  (Docket Entry # 79-9, p. 10).  In Cowen's opinion, defendant's failure to use a safe curb design "created the dangerous condition that caused [plaintiff]'s fall and resulting injury."  (Docket Entry # 79-9, p. 10).  He further opined that defendant "should have provided warnings or markings to make identification of the hazard by pedestrians certain . . . [and defendant]'s failure to warn [plaintiff] of the danger was a cause of her trip, fall and injury."  (Docket Entry # 79-9, p. 10).

## DISCUSSION

Defendant seeks summary judgment against plaintiff for both

causes of action advanced in the complaint. (Docket Entry # 79). With respect to the negligence claim, defendant contends that any danger presented by the rolled curb was open and obvious as a matter of law and, therefore, it did not owe or breach a duty of care to plaintiff. (Docket Entry # 79, p. 7). Defendant argues that the rolled curb design conformed with all applicable building codes and that it could not have anticipated that the rolled curb would cause harm. (Docket Entry # 79, p. 10). With respect to the violation of the state building code claim, defendant argues that Massachusetts does not recognize an independent cause of action for a violation of the building code. (Docket Entry # 79, p. 12).

In opposition to the renewed summary judgment motion, plaintiff argues that the jury must assess the safety conditions of the premises and determine whether defendant was negligent. (Docket Entry # 82, p. 3). Additionally, plaintiff contends that she stated a triable cause of action based on a violation of the state building code. (Docket Entry # 82, p. 5).

I.   Negligence

Plaintiff argues that defendant was negligent in adopting a "rolled curb" design. (Docket Entry # 8, p. 15). As alleged in the complaint, such a design begins as a walking surface that is "flush and level with both the sidewalk and the asphalt parking lot at the store's entrance, and then transitions to an uneven,

10

concave, sloped surface . . . creat[ing] an excessive cross
slope." (Docket Entry # 8, p. 15). Plaintiff contends that
this design, which lacks markings or painted striping to
distinguish the curb from the sidewalk, made the rolled curb
unsafe. (Docket Entry # 8, p. 15). Furthermore, plaintiff
alleges that defendant was "aware of the risk of injury" to
pedestrians from the rolled curb and disregarded it. (Docket
Entry # 8, p. 15). Thus, plaintiff claims defendant breached
its duty of care to her and, as a result, she was "seriously
injured." (Docket Entry # 8, p. 16).

Defendant seeks summary judgment arguing that the danger
posed by the rolled curb was open and obvious as a matter of law
and, consequently, it neither owed nor breached a duty to
plaintiff. (Docket Entry # 79, p. 9). Defendant claims that
the rolled curb is marked by changes in color from the
"bituminous paving to the concrete walkways, as well as 1-foot
deep ribbed transition surfaces, which clearly identify that a
change from the asphalt parking lot and driveway to the concrete
sidewalk." (Docket Entry # 79, p. 9). Additionally, the
transition between the driveway and accessible sidewalk level
entry to the store is designated by a series of 30-inch diameter
bright red balls. (Docket Entry # 79, p. 9). Defendant also
argues that it could not "anticipate that the rolled curb would
cause physical harm notwithstanding its allegedly known or

obvious danger." (Docket Entry # 79, p. 10). Defendant supports this claim with its expert report, which states that the rolled curb "complied with all applicable building codes," and with the fact that the rolled curb was approved by the building inspector when the store was granted its Certificate of Occupancy. (Docket Entry # 79, pp. 10-11). Plaintiff submits that it is for the jury, not the court, to assess the safety condition of the premises and determine whether defendant was negligent. (Docket Entry # 82, p. 3).

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006). Ordinarily, "The questions of breach, damages, and causation are 'the special province of the jury.'" Cracchiolo v. Eastern Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014) (quoting Jupin v. Kask, 849 N.E.2d at 835). "[T]he question of whether defendant owed a duty of care in the first instance is an issue of law, and may be settled on summary judgment if (on the undisputed facts) the risks posed by the defendant's actions were not 'foreseeable.'" Id. Summary judgment may be allowed when plaintiff produces no evidence upon which a reasonable jury could conclude that defendant acted negligently. See Samson v.

<u>Target Corp.</u>, 750 F.Supp.2d 354, 358 (D.Mass. 2010).

"It is well established that an owner or possessor of land owes a common law duty of reasonable care to all lawful visitors." <u>Davis v. Westwood Group</u>, 652 N.E.2d 567, 569 (Mass. 1995). This duty of care "includes an obligation to maintain the premises in a reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." <u>Id.</u> at 569-70; <u>see</u> <u>also</u> <u>Mounsey v. Ellard</u>, 297 N.E.2d 43, 52 (Mass. 1973) (defining "'reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk'") (internal citation omitted).

"[A] landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence." <u>O'Sullivan v. Shaw</u>, 726 N.E.2d 951, 954 (Mass. 2000). "Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." <u>Id.</u> at 954-55. "[W]here a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of

13

it and, therefore, 'any further warning would be an empty form'
that would not reduce the likelihood of resulting harm." Id. at
955 (quoting LeBlanc v. Atlantic Bldg. & Supply Co., 84 N.E.2d
10, 12 (Mass. 1949)).  Thus, "a landowner is 'not obliged to
supply a place of maximum safety, but only one which would be
safe to a person who exercises such minimum care as the
circumstances reasonably indicate.'"  Id. at 954 (quoting Lyon
v. Morphew, 678 N.E.2d 1306, 1310 (Mass. 1997)).

     "A property owner, however, is not relieved from remedying
an open and obvious danger where it 'can and should anticipate
that the dangerous condition will cause physical harm to the
[lawful visitor] notwithstanding its known or obvious danger.'"
Papadopoulos v. Target Corp., 930 N.E.2d 142, 151 (Mass. 2010)
(quoting Soederberg v. Concord Greene Condo. Ass'n, 921 N.E.2d
1020, 1024 (Mass.App.Ct. 2010), citing Restatement (Second) of
Torts § 343A cmt. f, at 220 (1965)).  Consistent with the
general rule of no liability for dangers that would be obvious
to persons of average intelligence, "exceptions could be found
to exist in situations where it remains reasonably foreseeable
that the danger would cause injury despite the fact that the
danger is obvious or was brought to the plaintiff's attention."
Quinn v. Morganelli, 895 N.E.2d 507, 511 (Mass.App.Ct. 2008).

     The court in Quinn considered a premises liability action
dismissed by the lower court's allowance of the defendants'

14

motion for summary judgment.  The plaintiff, who was visiting the defendants' home, fell because of a "sunken living room that was several inches lower than the adjacent front hallway.  The flooring tiles used in the hallway were identical to those used in the sunken living room—they were the same color, texture, and brand."  Id. at 508.  The plaintiff had visited the defendants' home on two prior occasions, but on one of those occasions she did not enter inside the house.  Id.  When the plaintiff entered the defendants' house on the day of the accident, "bright sunlight emanated from windows near the front door and skylights above the living room."  Id.  The plaintiff fell while she was introducing her sister to one of the two defendants as the three were moving from the hallway into the sunken living room.  Id.

In reviewing the lower court's allowance of the defendants' motion for summary judgment, the court in Quinn examined two points of contention:  (1) whether plaintiff "submitted sufficient proof that there was a dangerous condition of which the defendants had actual or constructive notice"; and, if so, (2) whether the "danger was open and obvious as a matter of law."  Id. at 509.  Regarding the first point, the plaintiff contended that the premises was "not in reasonably safe condition because the existence of the change in level between the hallway and the living room was obscured by the manner in which these areas were tiled and lit, and that the defendants

15

breached their duty of care by failing to remedy this condition or warn her about it." Id. at 509.  The court held that "a jury could reasonably find that the use of the same tile in the hallway and the sunken living room, together with the lighting conditions created by the windows and skylight, posed . . . [an] unreasonable danger to visitors, and that the defendants knew or reasonably should have known that to be the case." Id.  The court reasoned that jurors could arrive at such a conclusion in light of their evaluation of photographs in the record, testimony from the plaintiff and her sister regarding their inability to see the change in level, the opinion of an expert witness which "sufficed to establish that there was a deviation from proper building practice"[1] and the defendants' statements at the time of the accident that someone had fallen in the same

---

[1]  The plaintiff submitted affidavits from two expert witnesses who examined photographs included in the summary judgment record.  One witness named Sean P. Curry ("Curry"), a licensed builder and former building supervisor, "opined that a hazardous condition was created by having the same tile in the hallway and the sunken living room, and that the location of the skylights enabled light to reflect off the floors, making them 'blend together.'"  Quinn v. Morganelli, 895 N.E.2d at 509.  In response to Curry's affidavit, the court noted in light of "other evidence" from which a defective condition could be inferred, "an opinion that the step did not conform with good building practice was *not* essential to the plaintiff's case." Id. at 510 fn. 4 (emphasis added).  The court went on to add that "*even if the defendants had presented proof that the step conformed to all applicable standards, such proof would not have entitled them to summary judgment.*" Id. (emphasis added) (citing Upham v. Chateau De Ville Dinner Theatre, Inc., 403 N.E.2d 384, 386-87 (Mass. 1980)).

location at a previous time.  Id. at 510.

Furthermore, the court in Quinn held that it was possible for a jury to conclude that this was not a case of "open and obvious" danger.  Id. at 510.  After reviewing the photographs in the record, the court concluded that "reasonable people may differ in their conclusions as to whether the step-down was obvious."  Id.  While "plaintiff may have had actual knowledge of the step-down from having been inside the defendants' home previously," the court reasoned that this fact bore only on the plaintiff's comparative negligence and "should not have played a role in the judge's analysis of the defendants' duty, which turns on whether the risk of injury was obvious to a hypothetical person of average intelligence."  Id. (referencing O'Sullivan v. Shaw, 726 N.E.2d at 958 & n.3).  Thus, overturning the trial court's allowance of the defendants' motion for summary judgment, the court in Quinn determined that the hazard resulting in the plaintiff's injuries was not open and obvious as a matter of law and that the plaintiff was entitled to proceed on the theories that the defendants breached their duties of care by failing to warn the plaintiff of an unreasonable danger of which she was or should have been aware and that the defendants were negligent in failing to remedy that

condition.[2]  Id.

Here, viewing the evidence in the light most favorable to plaintiff and making all reasonable inferences in her favor, this court concludes that the rolled curb on defendant's premises is not open and obvious as a matter of law.  Reasonable people may differ in their conclusions on whether the danger posed by the rolled curb was open and obvious and whether defendant knew or should have known that to be the case.  The record indicates that defendant was aware of previous trip-and-fall incidents involving the rolled curb in the front of its store but did not attempt to warn or remedy that condition.  It remains for the fact finder to determine whether defendant breached its duty of care by failing to warn plaintiff and whether defendant was negligent in failing to remedy that condition.  Defendant is therefore not entitled to summary judgment as to the first cause of action for negligence.

II.  State Building Code Violation

Defendant argues that Massachusetts does not recognize an independent cause of action for violation of the building code and, thus, the second cause of action should be dismissed on summary judgment.  (Docket Entry # 79, p. 12).  In opposing the

---

[2]  The court added that it was "for the jury to decide whether remediation of the hazard—and not simply a warning—reasonably was required to discharge the defendants' duty of care."  Quinn v. Morganelli, 895 N.E.2d at 510.

summary judgment motion, plaintiff argues that Massachusetts General Laws chapter 143, section 51 ("section 51"), imposes strict liability on commercial properties for violations of the state building code and that there is a triable issue as to defendant's compliance with the state building code. (Docket Entry # 82, p. 6). In a reply brief, defendant disagrees that section 51 applies to the rolled curb and imposes liability for a violation of the state building code. (Docket Entry # 85, p. 1).

Massachusetts has long held that a "violation of a safety statute or ordinance does not in itself give rise to a cause of action but is evidence of negligence." Dolan v. Suffolk Franklin Sav. Bank, 246 N.E.2d 798, 799 (Mass. 1969).[3] Defendant is therefore correct that any potential violation of the state building code would not by itself be a recognized cause of action for which it can be held liable to plaintiff.

Plaintiff further argues, however, that she can establish liability for a state building code violation under section 51. Section 51 states in pertinent part that:

> The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or *building* shall comply with the provisions of this chapter and the state building code

---

[3]   Dolan was overruled in part by Lindsey v. Massios, 360 N.E.2d 631, 634 (Mass. 1977), on different grounds unrelated to the principle cited above.

relative thereto, and such person shall be liable to any
person injured for all damages caused by a violation of any
of said provisions.

Mass. Gen. Laws ch. 143, § 51 (emphasis added).  Because the

rolled curb is not a "place of assembly, theatre, special hall,

public hall, factory, workshop, [or] manufacturing

establishment," the only way section 51 would apply is if the

rolled curb is a "building."  Chapter 143, section one, defines

the term "[b]uilding" as:

> [A] combination of any materials, whether portable or
> fixed, having a roof, to form a structure for the shelter
> of persons, animals or property.  For the purpose of this
> definition "roof" shall include an awning or any similar
> covering, whether or not permanent in nature.  The word
> "building" shall be construed where the context requires as
> though followed by the words "or part or parts thereof."

Mass. Gen. Laws ch. 143, § 1.

Statutory interpretation "always starts with the language

of the statute itself."  Matamoros v. Starbucks Corp., 699 F.3d

129, 134 (1st Cir. 2012) (interpreting Massachusetts law).

Typically, the "ordinary meaning of the statutory language"

applies.  Id.

Here, the statute defines "'[b]uilding'" as "having a roof,

to form a structure" for shelter.  The plain language includes

an "awning" or "similar covering" as constituting part of a

"'roof.'"  Mass. Gen. L. ch. 143, § 1.  The rolled curb does not

have a roof and it is not an awning or a similar covering.  The

curb is also not part of a structure for "shelter" of persons or

20

property.  Mass. Gen. L. ch. 143 § 51.  Consequently, the rolled curb does not qualify as a "building" under section 51.  Thus, the plain meaning of sections 51 and one, does not provide a basis of liability for the violation of the building code claim in Count Two.

Plaintiff nevertheless contends that summary judgment is inappropriate because there is a "principal source of disagreement" between the parties as to "whether the location of the fall is a component of the means of egress from the store." (Docket Entry # 82, p. 6).  The phrase "means of egress" is found nowhere in the categories in section 51 or in the definition of "building" in section one.  See Mass. Gen. Laws ch. 143, §§ 1, 51.  The plain language of section one defines a "building" as a structure for "shelter" and a rolled curb attached to a sidewalk that leads into a building does not form part of a structure for shelter.

Plaintiff seemingly takes the phrase "'means of egress'" from the sole case she cites, Sheehan v. Weaver, 7 N.E.3d 459, 468 (Mass. 2014), to argue that section 51 imposes strict liability for state building code violations and that this liability would extend to a means of egress, such as a rolled curb.  The issue in Sheehan, however, was whether commercial and residential portions of the same structure can be construed differently under the definition of a "building" in section one.

21

See Sheehan v. Weaver, 7 N.E.3d at 462.  Furthermore, the court in Sheehan refers to "means of egress" primarily as it relates to the phrase's adoption in chapter 780 of the Code of Massachusetts Regulations, section 101, in order to consider the nature of the "egress" in determining whether a portion of a structure is commercial or residential.  See 780 C.M.R. § 101. Furthermore, the facts of Sheehan are distinguished from the case at bar because the court never addressed whether the structure at issue had a roof.  See Sheehan v. Weaver, 7 N.E.3d at 462-63.

In sum, there is no independent cause of action that would establish liability for a violation of the state building code. Plaintiff fails to cite to any other statute that would provide a basis to find defendant liable based solely on a violation of the state building code.  Viewing the evidence in the light most favorable to plaintiff, summary judgment is warranted on Count Two because the rolled curb does not constitute part of a "building" within the meaning of section 51.

### CONCLUSION

In accordance with the foregoing discussion, the motion for summary judgment (Docket Entry # 79) is **ALLOWED** as to Count Two and **DENIED** as to Count One.  The deadline to file summary judgment motions has passed and there shall be no extensions.

This court will conduct a status conference on March 23, 2016 at

2:45 p.m. to set a trial date.

/s/ Marianne B. Bowler

**MARIANNE B. BOWLER**
United States Magistrate Judge